**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                    :
RENNIE PHIL WASHINGTON,             :
                                    :  Civil Action No. 05-5213 (JLL)
          Petitioner,               :
                                    :
     v.                             :      **O P I N I O N**
                                    :
JOHN ASHCROFT, et al.,              :
                                    :
          Respondents.              :
_____ :


**APPEARANCES:**

   RENNIE PHIL WASHINGTON, Petitioner, Pro Se
   D-42122
   Bergen County Jail, Housing Unit #S-7
   P.O. Box 0369
   Hackensack, New Jersey 07601

   CHRISTOPHER J. CHRISTIE, United States Attorney
   NEIL RODGERS GALLAGHER, Assistant U.S. Attorney
   970 Broad Street, Suite 700
   Newark, New Jersey  07102
   Attorneys for Respondents

**LINARES, District Judge**

   Petitioner, Rennie Phil Washington ("Washington"), is currently being detained by the Department of Homeland Security ("DHS"), Bureau of Immigration and Customs Enforcement ("BICE") at the Bergen County Jail in Hackensack, New Jersey, pending his removal from the United States.  On or about October 31, 2005, the United States District Court for the Southern District of New York transferred a severed claim from Washington's Petition for

Writ of Habeas Corpus under 28 U.S.C. § 2241, in which he challenges his indefinite detention as unlawful and unconstitutional.

The named respondents are the Attorney General of the United States; the Secretary of the United States Department of Homeland Security ("DHS"); Laura A. Michalec, Assistant Chief Counsel; James A. Ziglar, Commissioner of the legacy Immigration and Naturalization Service[1] ("INS"); the District Director of New York State; and David Venturella, Director for INS HQPDU.  The Government filed an Answer to the petition on December 23, 2005, with a certified copy of the relevant administrative record. Washington filed an opposition to the respondents' Answer, and motions for related relief, on or about January 11, 2006 and January 24, 2006, respectively.[2]

---

[1]  Effective March 1, 2003, the Immigration and Naturalization Service ("INS") ceased to exist as an agency of the Department of Justice, and its functions were transferred to the Department of Homeland Security ("DHS").  See Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002).  The Bureau of Immigration and Customs Enforcement ("BICE") of the DHS is responsible for the interior investigation and enforcement functions that formerly were performed by the INS.

[2]  In his motions, Washington seeks an evidentiary hearing on the removal claims, and a temporary restraining order to prevent the BICE from transferring petitioner to another detention.  To the extent that the motion for an evidentiary hearing relates to petitioner's challenge to the final order of removal on review before the United States Court of Appeals for the Second Circuit, the motion will be dismissed because this District Court has no jurisdiction over matters challenging removal orders pursuant to the REAL ID Act of 2005.  The second

## BACKGROUND

Washington is a native and citizen of Jamaica, who was admitted into the United States as a lawful permanent resident on February 6, 1982.  (AR 135).[3]  The administrative record shows that Washington has a longstanding and violent criminal history involving first degree rape and second degree robbery convictions in 1987 and 1995, respectively, and four convictions for the criminal sale of marijuana.  (AR 122).

As a result of the rape conviction, in 1991, the INS issued an Order to Show cause charging Washington with being deportable from the United States under former § 241(a)(2)(A)(I) of the Immigration and Nationality Act ("INA").  (AR 116).  An immigration hearing was held in Louisiana after Washington was released from prison on the rape conviction and Washington was placed in INS custody at the detention facility in Oakdale, Louisiana.  The immigration judge ("IJ") found petitioner deportable, but granted a continuance so that Washington could seek relief under § 212(c) of the INA.  (AR 37-40).  A hearing was scheduled for May 20, 1993, but for some undocumented reason,

---

motion seeks to prevent petitioner's transfer to another detention facility.  As the District Court has no jurisdiction over administrative decisions regarding the detention of aliens subject to a final order of removal, this motion likewise will be dismissed.

[3]  Hereinafter, the administrative record submitted by the respondents in connection with this matter will be referenced as "AR".

the case was administratively closed in July 1993 and Washington was released on a $10,000 bond on December 14, 1993. (AR 112). Thereafter, Washington was arrested and convicted by guilty plea to a second degree robbery charge in 1995. (AR 103-107).

On March 21, 2003, a deportation hearing resumed before an IJ in New York. On September 30, 2003, the DHS added the robbery conviction as another ground for Washington's removal. Removal proceedings resumed on October 23, 2003, and Washington conceded the removal charges against him. (AR 78-81). The IJ found Washington removable as charged, ineligible for § 212(c) relief because he had served more than five years in prison on an aggravated felony conviction, and ordered that Washington be removed to Jamaica. (AR 21-24).

Washington appealed the removal order to the Board of Immigration Appeals ("BIA"), but the appeal was later dismissed after petitioner's withdrawal request. He then moved for reconsideration. On April 14, 2004, the BIA denied the motion and affirmed the IJ's decision that Washington was ineligible for § 212(c) relief. (AR 3).

On May 6, 2004, Washington filed a habeas petition with the United States District Court for the Southern District of New York, challenging his removal from the United States. On July 7, 2004, the district court stayed the execution of the removal order pending disposition of the petition. On October 19, 2005,

the court transferred the portion of the petition challenging Washington's removal order to the United States Court of Appeals for the Second Circuit pursuant to the REAL ID Act of 2005. The indefinite detention claim asserted in the petition was severed and transferred to this Court for review because Washington is in BICE custody in New Jersey.

The record confirms that a custody status review was conducted by the Director of BICE's Philadelphia Field Office on August 10, 2004. A decision to continue custody was made on the ground that Washington's release would endanger the community. (AR 1). Washington was not scheduled for another custody review until February 7, 2006, more than a year after the August 10, 2004 custody review. It is not known to this Court whether the custody review has taken place as indicated by respondents.

## DISCUSSION

### A.   Standard of Review

Washington seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(3). That section states that the writ will not be extended to a prisoner unless "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Here, petitioner challenges his continued detention since December 31, 2003.[4] He claims that his

---

[4] Washington alleges that he was released from prison and turned over to BICE custody on December 31, 2003.

indefinite detention is constitutionally impermissible because he has been denied due process guaranteed under the Fifth Amendment. He further claims that his continuing detention is unlawful because he does not pose a flight risk or danger to public safety.  He contends that he has positive prison adjustment and program records and is rehabilitated.

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

Respondents admit that Washington is detained pursuant to 8 U.S.C. § 1231(a), but that the circumstances of his continued detention are not similar to the circumstances that were ruled unconstitutional in Zadvydas v. Davis, 533 U.S. 678 (2001).  For instance, unlike Cambodia (the country at issue in Zadvydas), Jamaica has a repatriation agreement with the United States and has not refused to admit petitioner upon his removal from the United States.  Moreover, the respondents contend that Washington's request for a judicial stay of removal, which was

granted by the court, suspended the removal period under the statute.

**B.  Discussion**

Post-removal-order detention is governed by 8 U.S.C. § 1231(a).  Section 1231(a)(1) requires the Attorney General to attempt to effectuate removal within a 90-day "removal period."

> The removal period begins on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Section 1231(a)(6) permits continued detention if removal is not effected within 90 days.  However, the Supreme Court has held that such post-removal-order detention is subject to a temporal reasonableness standard.  Specifically, once a presumptively-reasonable six-month period of post-removal-order detention has passed, a resident alien must be released if he can establish that his removal is not reasonably foreseeable.  See Zadvydas v. Davis, 533 U.S. 678 (2001); Clark v. Martinez, 543 U.S. 371 (2005).

In addition § 1231(a)(1)(C) provides that the removal period shall be extended, and the alien may remain in detention during

7

such extended period, if the alien "acts to prevent the alien's removal subject to an order of removal."

Here, it appears that Washington is arguing that he should not be subject to incarceration simply because he secured a stay of removal. However, it has been held that the six-month presumptively reasonable post-order removal period of Zadvydas is tolled when an alien requests judicial review of a removal order. See Soberanes v. Comfort, 388 F.3d 1305, 1311 (10th Cir. 2004)(detention "directly associated with a judicial review process that has a definite and evidently impending termination point" is "more akin to detention during the administrative review process, which was upheld [by the Supreme Court]")(citing Demore v. Kim, 538 U.S. 510, 527-29 (2003)); Wang v. Ashcroft, 320 F.3d 130, 145-47 (2d Cir. 2003)("where a court issues a stay pending its review of an administrative removal order," the post-order detention provisions of § 1231 do not apply because "the removal period commences on 'the date of the court's final order'"); Akinwale v. Ashcroft, 287 F.3d 1050, 1052 n.4 (11th Cir. 2002)(by applying for stay, petitioner interrupted the running of the time under Zadvydas); Evangelista v. Ashcroft, 204 F. Supp.2d 405, 409 (E.D.N.Y. 2002)(petitioner's reliance on Zadvydas to be released from detention is "disingenuous" when sole reason being held is his requested stay of deportation); Hines-Roberts v. Ashcroft, 2003 WL 21305471 at *3 (D. Conn. Jun.

5, 2003)(unpubl.)(as a result of stay of deportation, Attorney General could not seek to bring about petitioner's deportation, and therefore, period of detention does not raise due process issue presented in Zadvydas); Archibald v. INS, 2002 WL 1434391 at *8 (E.D. Pa. July 1, 2002) (unpubl.) (because petitioner asked for and was granted stay of deportation, he is not being held in violation of Zadvydas, but rather held pursuant to stay he requested).  For substantially the same reasons, the respondents rely on Abimbola v. Ridge, 2005 WL 588769 *2 (D. Conn. 2005)("a self-inflicted wound cannot be grounds for a Zadvydas claim"); Guang v. INS, 2005 WL 465436 (E.D.N.Y. 2005); Sansui v. INS, 2003 WL 21696945 (E.D.N.Y. 2003), aff'd in part, remanded in part, 100 Fed. Appx. 49 (2d Cir. 2004).

    Here, Washington sought, and was granted a stay of the removal order by the Southern District of New York on July 7, 2004.  This stay of removal remains in effect while Washington's petition for review is pending in the United States Court of Appeals for the Second Circuit.  Thus, this Court finds that, as the stay is still in effect, the presumptively-reasonable six-month period has not yet begun to run pursuant to 8 U.S.C. § 1231(a)(1)(B)(ii).  Moreover, there is no indication in the record that Washington's removal to Jamaica is not reasonably foreseeable or that travel documents will not be issued once, and if, the stay of removal is lifted.  Accordingly, it would appear

9

that Washington's continuing detention complies with the express provision of 8 U.S.C. § 1231(a)(1)(B)(ii).

Nevertheless, Washington appears to contend that the sheer length of his prolonged detention violates his right to due process under the Fifth Amendment.[5]  In <u>Oyedeji v. Ashcroft</u>, 332 F. Supp.2d 747 (M.D. Pa. 2004), the district court noted that the "price for securing a stay of removal should not be continuing incarceration," and concluded that the due process clause of the Fifth Amendment requires that a criminal alien should be afforded an opportunity to be heard on the question of conditional release pending judicial review of a final administrative order of removal, the execution of which has been stayed by judicial order.  <u>See</u> <u>Oyedeji</u>, 332 F. Supp.2d at 753-754; <u>Harrison v. Hogan</u>, 2005 WL 2020711 (M.D. Pa. July 18, 2005); <u>Haynes v.</u>

---

[5] In this regard, the Court notes the parallel to <u>Zadvydas</u>, which recognized the constitutional implications of prolonged detention for those aliens subject to a final order of removal. Realistically, the prolonged confinement of those detainees whose potentially meritorious challenge to removal is part of a congested court docket is indistinguishable from the indefinite detention of those aliens whose native countries refuse repatriation.  Furthermore, this concern for an unjustified continuing detention for those aliens pending administrative removal proceedings was discussed by Justice Kennedy in his concurring opinion in <u>DeMore v. Kim</u>, 538 U.S. 510, 523 (2003). The Supreme Court stressed that mandatory detention of aliens pending their administrative removal proceedings was justified only "for the brief period necessary for their removal proceedings."  538 U.S. at 513.  However, Justice Kennedy recognized that lawful permanent resident aliens "could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified."  <u>Id</u>. at 523.

Department of Homeland Security, 2005 WL 1606321 (M.D. Pa. July 8, 2005). The court's opinion in Oyedeji is the minority view given the overwhelming majority of courts determining to the contrary. See this Court's Opinion, supra, at pp. 8-9 (citing cases).

However, as a lawful permanent resident of the United States, Washington is entitled to the protections of the Due Process Clause under the Fifth Amendment. Tineo v. Ashcroft, 350 F.3d 382, 398 (3d Cir. 2003). The Supreme Court so stated in Zadvydas, recognizing that "[f]reedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that Clause protects." 533 U.S. at 690. Moreover, analogous to this case despite the fact that it involved an excludable alien, the Third Circuit has held that

> [w]hen detention [of an alien] is prolonged, special care must be exercised so that the confinement does not continue beyond the time when the original justifications for custody are no longer tenable. The fact that some aliens posed a risk of flight in the past does not mean they will forever fall into that category. Similarly, presenting danger to the community at one point by committing crime does not place them forever beyond redemption.

Ngo v. INS, 192 F.3d 390, 398 (3d Cir. 1994). The fact that a stay of removal has been issued in this case should not change this result. See Ly v. Hansen, 351 F.3d 263, 272 (6th Cir. 2003)(an alien not normally subject to indefinite detention as in Zadvydas should not be detained simply because he seeks avenues

11

of relief legally available to him; while the alien may be responsible for seeking a stay of removal, he is not responsible for the length of time such determinations may take); Oyedeji, 332 F. Supp.2d at 753 (the price for securing a stay of removal should not be indefinite detention).

Thus, having concluded that Washington is protected by the Fifth Amendment's Due Process Clause, this Court must next determine the review to which Washington is entitled with respect to conditional release. The Third Circuit's decision in Ngo provides relevant instruction in this regard as to the rules governing post-order custody reviews, now set forth in 8 C.F.R. § 241.4(i).[6] The rules specified the following: (1) advance

---

[6] The rules evaluated by the Third Circuit in Ngo are no longer in force, but seven elements listed by the court offer guiding principles by which to measure the current review procedures now in effect at 8 C.F.R. § 241.4. For instance, under 8 C.F.R. § 241.4(i), the Director of the Headquarters Post-Order Detention Unit ("HQPDU") is required to designate a two-person panel to make recommendations on whether an alien should be released or detained. This recommendation must be unanimous. The initial review, and at the beginning of subsequent reviews, the review panel examines the alien's records. If the panel does not recommend release, or if the HQPDU Director rejects a recommendation for release, the alien shall be personally interviewed by the review panel. The alien may have a representative at this interview, subject to reasonable security concerns, and he may submit any information he believes may be pertinent in securing his release.

Under 8 C.F.R. § 241.4(d), an alien may obtain a conditional release from detention by showing that his release will not pose a significant risk of flight and danger to the community, to the safety of others or to property pending removal. Under 8 C.F.R. § 241.4(e), an alien is eligible for release if th review panel or the HQPDU Director find that the following criteria are met:

written notice to alien of an opportunity to present information supporting release; (2) right to representation at the review; (3) right to an annual personal interview; (4) written explanations for a custody decision must be provided; (5) an opportunity for administrative review must be given; (6) custody reviews should occur every six months; and (7) a refusal to presume continued detention based on criminal history.  Ngo, 192 F.3d at 399.  The Third Circuit held that these provisions, if conscientiously applied, gave reasonable assurance of fair consideration of a petitioner's application for conditional release pending removal.  Id.

Here, the administrative record shows that Washington did receive a custody review in August 2004, consisting of an examination of petitioner's file and information that petitioner submitted to the BICE reviewing officials.  (AR 1).  A written Decision to Continue Detention was dated August 10, 2004 and sent to petitioner.  The decision states:

> After carefully weighing the factors pertaining to your case, you will not be released from the custody of the ICE because your criminal history clearly displays an escalation in the seriousness of offenses you have committed.  The aforementioned escalation in the seriousness of the offenses

---

(1) travel documents are not available or immediate removal is otherwise not practicable or not in the public interest; (2) the alien is presently a non-violent person; (3) the alien is likely to remain non-violent if released; (4) the alien is not likely to pose a threat to the community if released; (5) the alien is not likely to violate the conditions of release; and (6) the alien does not pose a significant flight risk if released.

>     you have committed lead to the conclusion that you would
>     pose a significant danger to the community if released from
>     custody.

(AR 1). Another custody review is imminent, scheduled for February 7, 2006.[7]

Thus, having carefully reviewed the record, the Court finds that Washington is not entitled to any greater custody reviews than that which the BICE has already provided him. Washington received a custody review in which the review panel considered petitioner's file and submissions for conditional release. There is no indication that Washington's removal to Jamaica will not be expeditiously accomplished once the judicial stay of removal is lifted. Washington is also guaranteed another custody review which apparently has not yet occurred at the time this decision was rendered. Finally, the Court is not inclined to find the BICE decision to continue custody to be anything other than an individualized determination of Washington's status, based on his escalating and violent criminal history.

Accordingly, the Court concludes that Washington's continued detention is statutorily permissible under 8 U.S.C. § 1231(a)(1)(B)(ii), because his removal period has not yet

---

[7] While the Court is concerned that the length of time between Washington's custody reviews have been longer than one year, it appears from review of the record that this delay was likely caused by petitioner's multiple filings for relief in different courts, and the transfer of his claims to the Second Circuit and to this Court.

commenced.  Moreover, Washington's continued detention does not violate due process and is not constitutionally impermissible at this juncture because he has been afforded an individualized custody review.  Therefore, the petition will be denied without prejudice to allow Washington the opportunity to reassert his claims regarding continued detention if the BICE does not provide adequate due process in the future.

## CONCLUSION

For the reasons set forth above, this petition will be denied, without prejudice to Washington bringing a new petition if the Government fails to provide him an adequate custody review in the future that comports with the due process principles set forth in this Opinion.  An appropriate Order follows.


                                         /s/ Jose L. Linares
                                        JOSE L. LINARES
                                        United States District Judge

Dated: February 8, 2006